**WO**                                                                                           BL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Eugene Rhodes,<br><br>    Plaintiff,<br><br>vs.<br><br>Quirino Valeros, et al.,<br><br>    Defendants. | No. CV 04-0644-PHX-JAT (LOA)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>**and**<br><br>**ORDER TO SHOW CAUSE** |

Plaintiff Paul Eugene Rhodes is litigating a *pro se* civil 42 U.S.C. § 1983 action against Defendants (1) Clinical Coordinator Judy Aguilar, (2) Clinical Coordinator Carrie Feehan, (3) Nurse Practitioner Susan Buffington, (4) Dr. Vern Strubeck, (5) Facility Health Administrator Terry Allred, (6) Facility Health Administrator Gary Pinkstaff, (7) Medical Services Administrator Richard Pratt, (8) Bruce Shiflett, (9) David Rivas, (10) Facility Health Administrator Gene Greeley, (11) Dr. Michael C. Lesac, (12) Dr. Kim Kumar, and (13) Facility Health Administrator Dennis Chenail (Doc. #81).  Now pending before this Court is Defendants' Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment (Docs. ##56, 73).  This Court will grant Defendants' motion, deny Plaintiff's motion, and dismiss with prejudice the action against Aguilar, Feehan, Buffington, Strubeck, Allred, Pinkstaff, Pratt, Shiflett, Rivas, Greeley, Lesac, and Kumar.  The Court will order Plaintiff to show cause why the remaining defendant, Defendant Chenail, should not be dismissed without prejudice.

**JDDL**

## I. Procedural History

Plaintiff filed a Third Amended Complaint against Defendants alleging deliberate indifference to his medical needs based on the failure to properly treat his skin condition (Doc. #81). Plaintiff alleged that the Medical Defendants (Aguilar, Feehan, Buffington, Strubeck, Lesac, and Kumar) failed to provide him proper medical treatment and refer him to a dermatologist, and that the Administrative Defendants (Allred, Pinkstaff, Pratt, Shiflett, Rivas, Greeley, and Chenail) failed to rectify the situation and ensure that he received proper medical treatment (Id.). Plaintiff also argued that his rights were violated because he was not present during a medical consultation and was not provided his medical records (Id.).

Defendants moved for summary judgment, arguing that: (1) Plaintiff received significant, and appropriate treatment for his skin condition; (2) the Hepatitis-C treatment did not cause or aggravate the skin condition; (3) the Administrative Defendants properly and appropriately responded to his grievances regarding his medical care; (4) Plaintiff failed to sufficiently allege a significant injury; (5) the Administrative Defendants did not personally participate in any alleged violation; and (6) Defendants are entitled to qualified immunity (Docs. #56, 85). In support of the motion, Defendants filed Dr. Michael Lesac's affidavit, portions of Plaintiff's deposition, and copies of inmate letters and grievances filed by Plaintiff (Docs. ##57, 58). Plaintiff responded (Doc. # 72), and filed a Motion for Summary Judgment (Doc. #73), and attached his medical records and copies of inmate letters and grievances (Doc. #75).

## II. Defendant Chenail

"If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." Fed. R. Civ. P. 4(m). On May 18, 2006, Plaintiff named as a Defendant Dennis Chenail in his Second Amended Complaint (Doc. #81). Plaintiff has yet to serve Defendant Chenail (Doc. #84). Plaintiff has until September 25, 2006, to either serve Defendant Chenail or show

JDDL

- 2 -

1 cause why this action should not be dismissed against Defendant Chenail due to Plaintiff's
2 failure to serve him.

3 **III. Deliberate Indifference to Medical Needs**

4     **A. Medical Evidence**

5 Based on the evidence before this Court, Plaintiff entered the Arizona Department of
6 Corrections (ADOC) on January 9, 2002, at which time he was diagnosed with Hepatitis-C
7 and a skin infection, which appeared as papula eruptions on his face (Doc. #57, ex. 1; Doc.
8 #75 at 45). Plaintiff's skin condition was initially diagnosed as impetigo, a common and
9 relatively minor bacterial skin infection that produces blisters or sores on the face and hands
10 (Doc. #57, ex. 1). Plaintiff's skin condition resulted in his skin itching such that he would
11 scratch in his sleep and wake up with blood under his fingernails (Id., ex. 2). Plaintiff was
12 given a prescription for oral antibiotics (Id., ex. 1).

13 On August 26, 2002, Plaintiff submitted a Health Needs Request (HNR), complaining
14 about a rash (Doc. #57, ex. 1). Plaintiff was seen on September 17, 2002, and diagnosed with
15 Furunculosis, a skin condition which caused deep sores of the skin (boils) (Id.). Plaintiff was
16 treated with Ancef injections (an antibiotic) for two days, oral antibiotics and an
17 antihistamine to reduce itching and swelling (Id.).

18 Plaintiff was seen twice in September 2002 (Doc. #75 at 19-20). On October 8, 2002,
19 during a follow-up examination, it was noted that Plaintiff's skin condition had improved,
20 but was not totally controlled (Doc. #57, ex. 1). Plaintiff's skin condition was attributed in
21 part to pruritus secondary to liver disease; Plaintiff's liver problems were causing a sensation
22 on his skin provoking a desire to scratch, which caused sores on his skin (Id.). Plaintiff was
23 given an antihistamine and skin ointment (Id.).

24 On October 15, 2002, Plaintiff was seen for another follow-up, at which time his skin
25 condition was still present, and the treating physician submitted a request for a dermatologist
26 consultant (Doc. #57, ex. 1). The following day, Plaintiff complained that he had not
27 received the cream he was prescribed for his rash (Doc. #75 at 21). In November 2002, the
28 infirmary checked the status of the dermatologist consultant request (Id. at 23).

1                Plaintiff was seen in November, December, and January, at which time he was
2        prescribed oral antibiotics for an infection and antihistamines to reduce itching and swelling
3        (Doc. #57, ex. 1). Plaintiff's skin condition improved during this time (Id.).
4                On June 12, 2003, Plaintiff had a consultation with a dermatologist via the telemed
5        system (Doc. #57, ex. 1; Doc. #74 at 1). During the consultation, images of Plaintiff's skin
6        condition were taken and sent electronically to Dr. Norman Levine, a dermatologist (Id.).
7        Dr. Levine reviewed the images and Plaintiff's medical history, and diagnosed Plaintiff's
8        condition as prurigo nodularis, most likely secondary to liver insufficiency (Id.). Dr. Levine
9        recommended Prednisone (an anti-inflammatory), skin ointment, and Doxepin (an
10       antihistamine) (Id.). Plaintiff was prescribed Prednisone and Triamcinolone, medications
11       consistent with Dr. Levine's recommendations  (Doc. #57, ex. 1; Doc. #74 at 2). Plaintiff,
12       however, was not present at the consultation between Dr. Levine and the prison doctor, or
13       aware that it had occurred (Doc. #58, exs. 27, 29; Doc. #75 at 86-87).
14               Within the next eight months, Plaintiff submitted approximately eight HNR's or
15       inmate letters relating to his skin conditions; Plaintiff complained about large sores which
16       were leaving scars (Doc. #57, exs. 1, 6). On each occasion, Plaintiff was examined and
17       prescribed various medications, including antibiotics, antihistamines, and skin ointments (Id.
18       ex. 1). Plaintiff's skin condition fluctuated in severity during this time  (Id.). On February
19       4, 2004, however, Plaintiff indicated that he had received nothing for his skin infection for
20       the past two and a half months (Doc. #75 at 25-26). Plaintiff was informed that creams
21       would not benefit his condition, and that a consultation was to occur shortly (Id. at 27).
22               On April 7, 2004, Dr. Levine again reviewed electronic images of Plaintiff's condition
23       (Doc. #57, ex. 1; Doc. #75 at 29). Dr. Levine opined that Plaintiff's skin condition was
24       caused by seborrheic dermatitis (dandruff) and folliculitis (a superficial infection of the hair
25       follicle) (Id.). Dr. Levine recommended that Plaintiff continue to use his skin cream, and try
26       a different antibiotic (Id.). The prison medical providers prescribed medications consistent
27       with these recommendations (Id.). Notably, Dr. Levine opined that if Plaintiff's condition
28       did not improve, he would need to undergo a diagnostic biopsy to confirm an alternative

JDDL                                                                 - 4 -

1  diagnosis of cutaneous lupus erthematosus (Id.).  Again, Plaintiff was not present at or aware
2  of the consultation (Doc. #58, exs. 27, 29; Doc. #75 at 86-87).

3  During the next few months, Plaintiff was treated with a different anti-itch medication
4  due to his constant scratching, which worsened his condition and increased his risk for
5  bacterial infections (Doc. #57, ex. 1; Doc. #75 at 33-34).  Further, a month after the
6  consultation, Dr. Lesac examined Plaintiff (Doc. #57, ex. 1; Doc. #75 at 32).  At that time,
7  Plaintiff stated that he believed the dermatologist-recommended antibiotics were aggravating
8  his condition, and requested to be placed on Erythromycin (Doc. #57, ex. 1).  Dr. Lesac gave
9  him the requested prescription (Id.).

10  On August 3, 2004, a biopsy was taken (Doc. #57, ex. 1).  The pathologist noted that
11  Plaintiff had an acute skin reaction that had localized inflamation and scar tissue that
12  extended to the fat layer of his skin (Id.).  The pathologist's reading resulted in a conclusion
13  that the current treatment of antibiotics and antihistamines were proper (Id.).  After the
14  biopsy, Plaintiff submitted numerous HNR's and received prescription medications on
15  numerous occasions (Id.).

16  On March 3, 2004, Plaintiff began receiving Interferon and Ribavirin for his Hepatitis-
17  C (Doc. #57, ex. 1).  These medications often suppress the immune system, which occurred
18  in Plaintiff's case (Id.).  As a result, the doses of medications were reduced and eventually
19  discontinued (Id.).  However, Plaintiff's skin condition did not substantially worsen or
20  improve as a result of the Hepatitis-C treatment (Id.).

21  Despite the frequency of the treatment, Plaintiff continued to suffer from itching and
22  sores, which extended into his eyes, sinus cavity and throat (Doc. #57, exs. 6, 8, 12, 16, 18,
23  20, 22; Doc. #58, exs. 25, 27, 29, 31, 33, 35, 37, 39, 43).  As a result of the itching, Plaintiff
24  has suffered various infections and scarring, and as a result of the medication Plaintiff
25  suffered a seizure and broken teeth (Id.; Doc. #58, ex. 31, 39; Doc. #75 at 98).  Plaintiff also
26  contracted Methicillin Resistant Staphylococcus Aureuas (MRSA), and will always be
27  susceptible to related infections (Doc. #75 at 40, 56).  Plaintiff was informed that there is no
28  long-term cure (Id. at 56).  Plaintiff acknowledged that he was seen on numerous occasions,

but believed that had he seen a dermatologist, his condition would be controlled or cured (Doc. #57, exs. 3, 4). Plaintiff believed that when he filed grievances, the physicians got mad and refused to prescribe him medication (Id., ex. 3).

Dr. Lesac opined that the treatment of Plaintiff's Hepatitis-C condition was medically appropriate and did not cause Plaintiff any serious side effects or harm (Doc. #57, ex. 1). Moreover, Plaintiff has a recurring, minor skin condition that fluctuates in severity depending on numerous factors, including Plaintiff's hygiene and the degree he aggravates the condition by scratching (Id.). Dr. Lesac further opined that Plaintiff's skin condition was possibly related to his liver insufficiency or other health issue, and is bacterial in nature (Id.). Additionally, Plaintiff had minor scarring, but suffered no physical limitations or disabilities (Id.). Finally, Plaintiff's condition will likely recur regardless of the treatments, which are merely an attempt to keep the condition in remission (Id.; Doc. #75 at 88-89, 91).

Plaintiff filed multiple inmate letters and grievances complaining about the lack of treatment for his medical condition (Docs. #57, exs. 6-22; #58, exs. 23-44; Doc. #75 at 9-12, 14-15, 39-43, 59-65, 74-91, 101). Defendants Allred, Pinkstaff, Shiflett, and Pratt investigated Plaintiff's complains, which included reviewing his medical records and discussing his condition and treatment with the appropriate medical personnel, and responded that Plaintiff was receiving proper treatment (Id.).

**B. Applicable Law and Analysis.**

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported  motion for

1  summary judgment; the requirement is that there be no *genuine* issue of *material* fact."
2  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "Only disputes over facts
3  that might affect the outcome of the suit under the governing law will properly preclude the
4  entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be
5  counted." Id. at 248.

6  "[D]eliberate indifference to serious medical needs of prisoners constitutes the
7  'unnecessary and wanton infliction of pain.'" Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).
8  "To demonstrate that a prison official was deliberately indifferent to an inmate's serious . . .
9  health needs, the prisoner must show that 'the official [knew] of and disregard[ed] an
10 excessive risk to inmate health.'" Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004)
11 (citing Farmer v. Brennan, 511 U.S. 825, 838 (1994)).  "Further, the deliberate indifference
12 must be both 'purposeful,' and 'substantial' in nature.'" Ruvalcaba v. City of Los Angeles,
13 167 F.3d 514, 525 (9th Cir. 1999) (internal citations omitted).  "Prison officials are
14 deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or
15 intentionally interfere with medical treatment. . . .  Mere negligence in diagnosing or treating
16 a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.'"
17 Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (citations omitted).

18 Plaintiff alleged that the Medical Defendants (Aguilar, Feehan, Buffington, Strubeck,
19 Lesac, and Kumar) failed to directly provide him proper medical treatment and refer him to
20 a dermatologist, and that the Administrative Defendants (Allred, Pinkstaff, Pratt, Shiflett,
21 Rivas, Greeley, and Chenail) failed to rectify the situation and ensure that he received proper
22 medical treatment (Doc. #81).  Initially, based on the record, there is a material question as
23 to whether Plaintiff suffers from a serious medical condition as a result of his skin condition.

24 The summary judgment evidence, however, demonstrates that Defendants were not
25 deliberately indifferent to Plaintiff's medical needs.  Plaintiff received significant and
26 appropriate treatment.  He was seen on a regular basis, properly treated, and referred to an
27 expert.  The fact that the medical staff failed to give the exact antibiotic recommended by Dr.
28 Levine, but prescribed one consistent with Dr. Levine's recommendation, does not result in

JDDL  - 7 -

deliberate indifference to Plaintiff's medical needs. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (providing that "a mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference'").

In March 2004, Plaintiff began receiving Interferon and Ribavirin for his Hepatitis-C, which suppressed his immunity system and had to be reduced and eventually discontinued (Doc. #57, ex. 1). However, Plaintiff's skin condition was not caused or aggravated by the treatment (Id.). The danger that the treatment would result in a suppressed immunity system did not result in deliberate indifference to Plaintiff's medical needs as Defendants were attempting to treat Plaintiff's Hepatitis-C and properly monitored him to ensure his skin condition would not worsen. Moreover, although Plaintiff maintained that the dermatological consultations never occurred, the record demonstrates that they did (Doc. # 73). Plaintiff's absence at, and lack of knowledge of, the consultation does not result in deliberate indifference to his medical needs. Dr. Levine reviewed the record and made appropriate recommendations, which were followed. Finally, Defendants responded promptly and appropriately to Plaintiff's grievances and inmate letters.

In sum, Plaintiff's skin condition will never be resolved, merely treated and put into remission (Doc. #57, ex. 1; Doc. #75 at 88-89, 91). However, the inability to "cure" Plaintiff, and Plaintiff's belief that he could be cured, does not result in a conclusion that Defendants were deliberately indifferent to his medical needs. Plaintiff was seen on a regular basis, and appropriately treated by the Medical Defendants for his skin condition. In addition, the Administrative Defendants investigated his complaints, reviewed his record, and ensured that Plaintiff was receiving prompt and proper treatment. Accordingly, there is no disputed issue of material fact and Defendants Aguilar, Feehan, Buffington, Strubeck, Allred, Pinkstaff, Pratt, Shiflett, Rivas, Greeley, Lesac, and Kumar are entitled to summary judgment. The Court will thus grant summary judgment, dismissing with prejudice Plaintiff's deliberate indifference claims against Defendants Aguilar, Feehan, Buffington, Strubeck, Allred, Pinkstaff, Pratt, Shiflett, Rivas, Greeley, Lesac, and Kumar.

## IV.  Count II

Plaintiff alleged in his Second Amended Complaint that his rights were violated when he was not present during a medical consultation and was not provided his medical records (Doc. #81).  Because the Second Amended Complaint was filed after the Defendants filed their Motion for Summary Judgment, the motion did not address this count.  However, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). If the Court determines that a claim could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend.  See Lopez v. Smith, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en banc*).  The Court is required to grant leave to amend "if a [claim] can possibly be saved" but not if a claim "lacks merit entirely."  Id. at 1129.  Because Plaintiff does not have a constitutional right to be present at a consultation or to obtain his medical records, and can not alleged that he suffered an injury, he has failed to state a claim and Count II will be dismissed with prejudice.

**IT IS ORDERED:**

(1) Defendants' Motion for Summary Judgment (Doc. #56) is **granted.**  The Clerk of Court must dismiss with prejudice Defendants Aguilar, Feehan, Buffington, Strubeck, Allred, Pinkstaff, Pratt, Shiflett, Rivas, Greeley, Lesac, and Kumar.

(2) Plaintiff's Motion for Summary Judgment (Doc. # 73) is **denied.**

(3) Count II is **dismissed** for failure to state a claim pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

(4)  Plaintiff, by September 25, 2006, must either serve Defendant Chenail with his Second Amended Complaint or show cause why Defendant Chenail should not be dismissed without prejudice.

(5)  If Plaintiff, by September 25, 2006, fails to serve Defendant Chenail or show cause why he should not be dismissed, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice.

DATED this 24th day of August, 2006.

James A. Teilborg
United States District Judge